# GARY A. CHICATELL *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.
## (AC 35174)

Robinson, Sheldon and Keller, Js.

Argued May 20—officially released August 20, 2013

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellant (named defendant).

*Opinion*

ROBINSON, J. The defendant Administrator of the Unemployment Compensation Act appeals from the judgment of the Superior Court sustaining the appeal of the plaintiff, Gary A. Chicatell, from the decision of the Employment Security Board of Review (board), which upheld a denial of unemployment compensation benefits.[1] On appeal, the defendant claims that the court improperly concluded that the board's determination that the plaintiff had been discharged for deliberate misconduct in the course of his employment was unreasonable and arbitrary and that, in so concluding, it failed to give proper deference to the factual findings of the board. We agree and, accordingly, reverse the judgment

---

[1] The plaintiff's employer, Securitas Security Services USA, Inc., also was named as a defendant but is not involved in this appeal. We therefore refer in this opinion to the Administrator of the Unemployment Compensation Act as the defendant.

of the trial court and remand the case to that court with direction to render judgment dismissing the plaintiff's appeal.

The following facts, found by the appeals referee and adopted by the board, and procedural history are relevant to our resolution of the appeal. Beginning on July 2, 2010, the plaintiff was employed by Securitas Security Services USA, Inc. (employer), as a part-time security officer. The employer's policies are set forth in an employee handbook. The handbook provides in relevant part that employees are prohibited from leaving their posts without proper relief or authorization from their supervisor. Employees also are prohibited from falsifying company records, including time records. Violation of either of those policies is grounds for termination of employment, even for the first occurrence. The plaintiff signed an acknowledgement that he had received a copy of the policy handbook on July 1, 2010.

On February 14, 2011, the plaintiff asked the employer for permission to leave his post early after he received a telephone call at work from his mother indicating that his father was dying. The employer granted the request, but more than an hour elapsed before the employer found a replacement for the plaintiff, and, as a result, his father passed away before the plaintiff could reach his bedside.

On April 29, 2011, the plaintiff received a telephone call at work from his wife. She informed the plaintiff that his mother had called their home and that his mother was upset and needed to talk to him. Because of his displeasure with the way his employer had handled the previous situation with his father, the plaintiff, who was scheduled to work that day until 8 p.m., left his post at 7:15 p.m., without notifying his employer or asking for permission to leave his post. The manager

of the building where the plaintiff was posted called the employer at 7:25 p.m. to inform it that the plaintiff had left his post at 7:15 p.m. The employer contacted the plaintiff at home. He admitted that he had left his post without proper authorization to deal with a personal matter.

On May 2, 2011, the plaintiff met with Jordan Dolger, a human resource manager for the employer. The plaintiff admitted to Dolger that he knew the employer's policy prohibiting employees from leaving their posts without authorization from a supervisor and that he had left his post early on April 29, 2011, without authorization, because he needed to deal with a personal matter. When asked by Dolger what departure time he had recorded on his time record, the plaintiff indicated that he had written 8 p.m., explaining that, when he arrived for work, he always recorded both his arrival and anticipated departure times. Dolger explained that this practice of dating his time in advance was a violation of the employer's policy prohibiting the falsification of company records. Although the plaintiff had never been disciplined previously by the employer, it was the employer's practice always to terminate the employment of any employee who violated the policies prohibiting leaving a post without authorization and falsification of time records. The plaintiff's employment was terminated on May 3, 2011.

Following his termination, the plaintiff filed for unemployment insurance benefits. The defendant determined that the plaintiff was disqualified from receiving benefits because he had been discharged for wilful misconduct in the course of his employment in accordance with General Statutes § 31-236 (a) (2) (B). The plaintiff appealed that decision.

An appeals referee heard the appeal on June 28, 2011.[2] The appeals referee issued a decision on June 30, 2011,

---

[2] The plaintiff participated in the hearing by telephone, and Dolger participated on behalf of the employer.

affirming the defendant's determination and dismissing the appeal. In discussing the plaintiff's decision to leave his post without authorization, the referee stated in relevant part: "The [plaintiff] testified that his mother was 'going ballistic.' However, he refused to specify what was bothering his mother; the [plaintiff] testified that this was 'personal.' Therefore, the referee finds that the [plaintiff] has not provided sufficient evidence to demonstrate a compelling circumstance that would have prevented him from complying with the policies on April 29, 2011."

The plaintiff filed a timely appeal from the decision of the appeals referee to the board. After reviewing the record, including the recording of the referee's hearing, the board issued a decision on September 28, 2011, in which it adopted the referee's findings as its own, affirmed the referee's decision that the plaintiff was disqualified from receiving benefits, and dismissed the appeal. The board concluded in relevant part: "Walking off the job is an act of deliberate misconduct in wilful disregard of the employer's interests, unless there are mitigating circumstances or an employee walked off the job in the midst of an emotional confrontation. . . . The employer discharged the [plaintiff] after he left work forty-five minutes early to respond to a [tele]-phone call from his mother. The [plaintiff] has not established that the [tele]phone call constituted an emergency on that particular night. Since the [plaintiff] in the case before us has not cited any circumstances which we would find sufficient to excuse his walking off the job on April 29, 2011, we conclude that the [plaintiff] was discharged for deliberate misconduct in the course of his employment." (Citation omitted.)

The plaintiff appealed from the board's decision to the Superior Court. The plaintiff did not file a motion to correct the board's findings. See Practice Book § 22-4. The court rendered judgment sustaining the plaintiff's

appeal, stating that it "disagree[d] with the conclusion reached by the [b]oard" that the plaintiff had failed to establish that the telephone call constituted an emergency or to cite any circumstances sufficient to excuse his walking off the job. The court found that the board's conclusion was "unreasonable and arbitrary and not supported based on the uncontradicted testimony of the [plaintiff] as stated hereinbefore. It is not a reasonable conclusion based on the facts submitted." The "uncontradicted testimony" referred to by the trial court consisted of statements included on the plaintiff's appeal forms to the board and to the court, not testimony by the plaintiff at the hearing before the appeals referee. This appeal followed.[3]

The defendant claims that the court erred in determining that the board's conclusions were unreasonable, arbitrary, and unsupported by the evidence. Specifically, the defendant argues that the factual findings adopted by the board support a conclusion of wilful misconduct, that the board was not unreasonable or arbitrary in applying the statutory definition of wilful misconduct to the facts of this case, and that "[t]he court plainly disregarded, in the absence of a motion to correct, the [b]oard's findings of fact and conclusions of law." We agree on the basis of our review of the record that the court exceeded its limited role on review, disregarded the facts as found by the appeals referee and adopted by the board, and improperly substituted its own judgment for that of the board on the basis of factual statements by the plaintiff that were outside the scope of its review.

"[A]ppeals from the board to the Superior Court are specifically exempted from governance by General Statutes § 4-166 et seq., the Uniform Administrative Procedure Act. All appeals from the board to the court are

---

[3] Because the plaintiff failed to file a timely appellee's brief, and disregarded an order requesting that he do so by March 5, 2013, and did not appear for oral argument before this court, we considered the appeal on the basis of only the record and the defendant's brief and oral argument.

controlled by [General Statutes] § 31-249b. . . . In appeals under . . . § 31-249b, the Superior Court does not retry the facts or hear evidence but rather sits as an appellate court to review only the record certified and filed by the board . . . . Practice Book § 519 [now 22-9]. The court is bound by the findings of subordinate facts and reasonable factual conclusions made by the appeals referee where, as here, the board . . . adopted the findings and affirmed the decision of the referee. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the board . . . has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) *Addona* v. *Administrator, Unemployment Compensation Act,* 121 Conn. App. 355, 360–61, 996 A.2d 280 (2010). "[T]he court may not substitute its own conclusions for those of the administrative board . . . ." (Internal quotation marks omitted.) *Tosado* v. *Administrator, Unemployment Compensation Act,* 130 Conn. App. 266, 274, 22 A.3d 675 (2011). Further, it bears repeating that "[i]n the absence of a motion to correct the findings of the board, the court is not entitled to retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether . . . there was any evidence to support in law the conclusions reached. [The court] cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility of witnesses." (Internal quotation marks omitted.) Id., 275, citing Practice Book § 22-9 (a).[4]

---

[4] Practice Book § 22-9, titled "Function of the Court," provides: "(a) [Unemployment compensation] appeals are heard by the court upon the certified copy of the record filed by the board. The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility

General Statutes § 31-236 provides in relevant part: "(a) An individual shall be ineligible for benefits . . . (2) . . . (B) if, in the opinion of the administrator, the individual has been discharged or suspended for . . . wilful misconduct in the course of the individual's employment . . . ." "Wilful misconduct" is defined as "deliberate misconduct in wilful disregard of the employer's interest, or a single knowing violation of a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied, provided such violation is not a result of the employee's incompetence . . . ." General Statutes § 31-236 (a) (16). Section 31-236-26a of the Regulations of Connecticut State Agencies provides in relevant part that in order to have engaged in deliberate misconduct in wilful disregard of the employer's interest, the defendant must find that when the individual engaged in the act of deliberate misconduct "he was not motivated or seriously influenced by mitigating circumstances of a compelling nature. Such circumstances may include: (A) events or conditions which left the individual with no reasonable alternative course of action; or (B) an emergency situation in which a reasonable individual in the same circumstances would commit the same act or make the same omission, despite knowing it was contrary to the

of witnesses. In addition to rendering judgment on the appeal, the court may order the board to remand the case to a referee for any further proceedings deemed necessary by the court. The court may remand the case to the board for proceedings de novo, or for further proceedings on the record, or for such limited purposes as the court may prescribe. The court may retain jurisdiction by ordering a return to the court of the proceedings conducted in accordance with the order of the court, or may order final disposition. A party aggrieved by a final disposition made in compliance with an order of the superior court may, by the filing of an appropriate motion, request the court to review the disposition of the case.

"(b) Corrections by the court of the board's finding will only be made upon the refusal to find a material fact which was an admitted or undisputed fact, upon the finding of a fact in language of doubtful meaning so that its real significance may not clearly appear, or upon the finding of a material fact without evidence."

employer's expectation or interest." It is the plaintiff's failure to establish any such mitigating circumstances that is at issue.

The plaintiff had an opportunity at the de novo hearing before the appeals referee to explain the circumstances behind his mother's telephone call to his wife on the day he left his post. The appeals referee made a finding that the plaintiff refused to provide any such explanation other than to say that his mother was " 'going ballistic' " and that the reasons were " 'personal.' " As a result, the appeals referee found that the plaintiff had provided insufficient evidence "to demonstrate a compelling circumstance that would have prevented him from complying with the policies [of his employer]." The board's conclusion that the plaintiff had failed to establish that the telephone call constituted an emergency or that other circumstances excused his decision to leave work forty-five minutes early was supported by and consistent with the appeals referee's findings.

In "disagreeing" with the board's conclusion that the plaintiff had failed to establish an emergency or other compelling circumstance, the court relied on and accepted as true assertions made by the plaintiff on his appeal forms to the board and to the court that sought to explain his decision to leave work without authorization.[5] Those statements, however, were not part of the

---

[5] On his appeal form to the board, the plaintiff stated that he continued to suffer from severe emotional distress and guilt from having been unable to leave work to be at his father's bedside before he died, that his mother, who now relied upon him for support, had complained that his work was more important to him than being with his father when he died, that upon learning that his mother was extremely distraught, he was worried about her and did not want to "let her down again," and that although he knew it was wrong to leave his post that night, he "could not deal with calling in and being told that [he] could not leave." He further stated that although he understood his employer's decision to terminate his employment, he believed that withholding his unemployment benefits was "like adding insult to injury." On his appeal form to the Superior Court, the plaintiff tried to provide a "response to the question raised by the [board] regarding the

factual record that the court should have considered in reviewing the board's decision. The court had no authority to try the matter de novo; yet, by considering the plaintiff's statements as "uncontradicted testimony," the court essentially found facts and substituted them for those of the appeals referee and the board, which exceeded the court's limited scope of review. See *Ray* v. *Administrator, Unemployment Compensation Act*, 133 Conn. App. 527, 534, 36 A.3d 269 (2012) ("court erred by accepting as true facts that the board did not find and by basing its conclusions on those facts"). On the basis of the certified record, we cannot conclude that the board acted unreasonably, arbitrarily, illegally or in abuse of its discretion in determining that the plaintiff engaged in wilful misconduct and therefore was not entitled to unemployment benefits.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment dismissing the plaintiff's appeal.

In this opinion the other judges concurred.

nature of the emergency . . . ." The plaintiff stated that when his mother had called she was "ranting, talking irrationally and not making any sense, very much out of character for her." He claimed that he was not sure whether she was having a medical emergency, perhaps a stroke, or was just distraught, but he knew that something was wrong and that she needed help. He concluded: "Though she did not have a medical emergency and I was able to calm her down, it was a frightening experience. My family and I determined that she should not be left alone until she was stronger and my sister took her to California to live with her for several months."